IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TACITA FAIR, individually and on behalf of those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | Case No. |
| COMMUNICATIONS UNLIMITED, INC., C.U. EMPLOYMENT, INC., COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC., COMMUNICATIONS UNLIMITED ALABAMA, INC., AND MARTIN C. ROCHA, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Tacita Fair ("Plaintiff" or "Fair"), individually and on behalf of others similarly situated, and for her Verified Complaint states as follows:

1.      Plaintiff Tacita Fair is a citizen of the United States who resides in Florissant, Missouri.  Plaintiff's Consent to Join this action under 29 U.S.C. § 216(b) is attached hereto as "Exhibit 1."

2.      Fair brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and as a class action under the Missouri Minimum Wage Law ("MMWL"), § 290.500 RSMo. *et seq*., to recover unpaid overtime owed to her and others similarly situated.

3.      On May 11, 2015, a Complaint was filed against Defendants in the case of *Lonnie Spells v. Communications Unlimited, Inc., et al.*, No. 4:15-CV-00747-ERW.  Opt-in consent forms were filed with the Court from May 2015 until August 2015.  On November 12, 2015, Plaintiff

filed a Motion for FLSA Conditional Certification.  This Motion was never ruled on.  On January 22, 2016, the Court entered a final Order and Judgment granting final approval of a collective action settlement as to the opt-in Plaintiffs that had opted in to the case.

4.      On April 6, 2016, Plaintiff filed her Consent to Join *Marcus Fulton v. Communications Unlimited, Inc., et al.*, No. 4:16-CV-00313-RWS.  On August 29, 2017, the Court dismissed the plaintiff's class and collective action claims because the named plaintiff never moved for certification though counsel of an FLSA collective action in violation of the scheduling order.  The Court also dismissed the claims of opt-in plaintiffs, including the opt-in form of Fair, without prejudice.  The statute of limitations was at least tolled for Fair as an operation of law from April 6, 2016 until August 29, 2017.[1]  The Court may also equitably toll the statute of limitations as appropriate.

5.      Communications Unlimited is a trade name used by the Defendants. Defendant Communications Unlimited, Inc. is a corporation organized under the laws of the State of Delaware. Communications Unlimited, Inc. maintains a place of business in Earth City, Missouri and conducts business within this District under the name Communications Unlimited, Inc.

6.      Defendant C.U. Employment, Inc. is a foreign corporation organized under the laws of the State of Alabama and registered in the State of Missouri.  C.U. Employment, Inc. maintains a place of business in Earth City, Missouri and also conducts business within this District under the name C.U. Employment, Inc.

---

[1] Once an individual opts into an FLSA collective action, the statute of limitations is tolled from the date the consent form is filed with the court. *See, e.g.*, *Chapman v. Fred's Stores of Tennessee, Inc.*, 2013 WL 1767791, at *13 (N.D. Al. Mar. 15, 2013) (citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380 (11th Cir. 1998)); *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002).  However, if the court later denies certification of the collective action and dismisses the opt-in plaintiffs, the statute of limitations resumes upon that dismissal. *See, e.g.*, *Chapman*, 2013 WL 1767791, at *13 (citing *Armstrong*, 138 F.3d at 1380).  Courts may equitably toll statutes of limitation in FLSA actions when doing so is in the interests of justice. *See, e.g.*, *Chapman*, 2013 WL 1767791, at *13.

7.      Defendant Communications Unlimited Contracting Services, Inc. is a foreign corporation organized under the laws of the State of Florida.  Communications Unlimited Contracting Services, Inc. conducts business in this District and the State of Missouri.

8.      Defendant Communications Unlimited Alabama, Inc. a/k/a "Communications Unlimited AL, Inc." is a corporation organized under the laws of the State of Delaware that conducts business in the State of Missouri and other states.

9.      Defendant Martin C. Rocha is individually liable as an "employer" under the broad definitions provided by the FLSA and MMWL because he owns the Defendant entities, has operational and business control over the Defendant entities, and exercises control over the entities' financial affairs, work bidding, contracting and compensation practices. 29 U.S.C. § 203(d); § 290.500(4), RSMo.

10.     Defendants are inter-related, commonly owned and controlled businesses that perform cable television, phone, and high-speed data installation services for cable providers in Missouri, Alabama, Georgia, Maryland, North Carolina, Tennessee, Virginia, and Washington, D.C.

11.     Defendants form a single integrated enterprise as they share (1) functional interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership and financial control.

12.     Defendants constitute joint employers of Plaintiff and those similarly situated as they share (1) the power to hire and fire Plaintiff and other Technicians, (2) supervision and control of Plaintiff and other Technicians' work schedules or conditions of employment, (3) determination of the rates and methods of payment, and (4) maintenance of employment records.

13.     Defendants are enterprises engaged in commerce or in the production of goods for

commerce within the meaning of 29 U.S.C. § 203(s) in that Defendants had, at all relevant times, two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in, or produced for, interstate commerce and Defendant had annual gross volume of sales made or business conducted of at least five hundred thousand dollars ($500,000.00).

14.     The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions.  This Court's jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

15.     This Court also has supplemental jurisdiction over Plaintiff's MMWL claim based on 28 U.S.C. § 1367 in that Plaintiff's MMWL claim is so related to her FLSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiff resides in this District, Plaintiff performed work at issue in this District, Defendants maintain a place of business in this District, Defendants regularly perform cable television, phone and high-speed data installation services within this District, and a substantial part of the events giving rise to the claim occurred in this District.

**DEFENDANTS' BUSINESS**

17.     Defendants employ technicians (cable installers) to install digital cable, telephone, and high-speed data services for residential and business customers on behalf of cable companies and high-speed data service providers.

18.     Defendants perform cable, telephone, and high-speed data installation services in Missouri, Alabama, Indiana, Maryland, North Carolina, South Carolina, Tennessee, Texas, and Virginia.

19.     Defendants' central office is located in Birmingham, Alabama. Defendants'

Alabama office directed, monitored and reviewed work of Plaintiff and similarly situated Technicians. Defendants dispatched Technicians from their Alabama office.

20.    Defendants have warehouses, offices, and locations throughout the states they operate in, including an office in Earth City, Missouri.  Defendants perform cable, telephone, and high-speed data installation services for Charter Communications in the greater St. Louis area.

21.    Defendants maintain centralized ownership, management and control. The Alabama office supervised and made centralized decisions for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.    Plaintiff performed work for Defendants from May 2015 to July 2017 as a Technician.

23.    Plaintiff brings this FLSA unpaid overtime claim as an "opt-in" collective action on behalf of herself and similarly situated Technicians who file a consent to join under 29 U.S.C. § 216(b).

24.    Defendants classify many of their Technicians as 1099 independent contractors and not as employees.  These workers are hereinafter referred to as "Technicians."

25.    Technicians work for Defendants in various locations where Defendants perform services across the United States.

26.    Defendants classified Plaintiff and those similarly situated as independent contractors.

27.    Plaintiff and those similarly situated allege that they were misclassified and should have been classified as employees of Defendants.[2]

---

[2] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee" and "employ" as "to suffer or permit to work," as these terms are broad and comprehensive in order to accomplish the remedial purposes of the FLSA. *United States v. Rosenwasser*, 323 U.S. 360, 362-63, (1945); 29 U.S.C. § 203(d), (g).

28.     Defendants' classification of Technicians as independent contractors constitutes a common decision, policy or plan denying Technicians overtime compensation for hours worked over 40 per workweek.

29.     Technicians seek relief on a collective basis challenging Defendants' classification policy and/or practice and the resulting failure to pay overtime.

30.     This common plan was a centralized decision of Defendants not particular to any office/warehouse or location of Defendants.

31.     Technicians are not paid overtime pay by Defendants at a rate of at least one-and-a-half times the regular rate of pay for hours worked over 40 per workweek.

## THE ECONOMIC REALITY BETWEEN TECHNICIANS AND DEFENDANTS

32.     Federal courts commonly consider six factors to determine the economic reality of the working relationship. The six factors are:

    a.   the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

    b.   the alleged employee's opportunity for profit or loss depending upon his managerial skill;

    c.   the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

    d.   whether the service rendered requires a special skill;

    e.   the degree of permanency and duration of the working relationship; and

    f.   the extent to which the service rendered is an integral part of the alleged employer's business.

33.     Technicians were economically dependent on Defendants, performing the work of

Defendants' business, and were not independent businesspeople in business for themselves. Technicians were clearly misclassified by Defendants.

### THE NATURE AND DEGREE OF DEFENDANTS' CONTROL AS TO THE MANNER IN WHICH TECHNICIANS' WORK IS PERFORMED

34.     Technicians' primary job was to install cable, telephone, and high-speed data services for residential and business customers and perform related services.

35.     Technicians performed the same types of duties and work as other technicians who Defendants classified as employees and who performed cable television, phone and high-speed data installation.  Defendants treated employee technicians and Technicians similarly.

36.     Technicians operated and maintained tools and equipment and prepared time logs, reports, and documentation in accordance with Defendants' policies and practices.

37.     Technicians' job duties included following Defendants' installation policies and performing duties required of them.

38.     Defendants coordinated Technicians' initial paperwork, background checks, drug screens, and payroll documents.

39.     Defendants handled paperwork, job information, human resources tasks, and were involved in the day-to-day management of the work performed by Technicians.

40.     Defendants controlled the manner in which Technicians performed tasks and determined the date, number, location, and time of installations Technician performed.  Defendants controlled the details of Technicians' work schedule.

41.     Defendants supervised Technicians' work closely, including assigning, instructing, inspecting, approving and disapproving of their work.  Defendants required Technicians to re-do work they determined to be problematic or substandard.

42.      Technicians contacted or were required to contact Defendants if they need

assistance completing installations, authorization to vary from a work order, or to resolve issues related to their work or pay.

43.     Defendants regularly communicated with Technicians regarding their work and stayed in close contact with Technicians.

44.     Defendants closely monitored Technicians, and would inspect, address and/or critique their work for purposes of quality control.

45.     Defendants required Technicians to obtain supervisor approval for additional time to complete installations if they could not complete such work within the allotted time interval.

46.     Defendants required Technicians to comply with instructions reflected in work orders or to obtain supervisor permission for variances from work orders.

47.     Defendants required Technicians to attend training sessions in which Defendants provided information about how to properly perform installations according to Defendants' specifications.

48.     Defendants provided on-the-job training and information regarding their specifications and the specifications of the cable and internet companies.

## DEFENDANTS' TRACKING APPLICATIONS

49.     Defendants required Technicians to install a tracking application on their smartphones, allowing Defendants to closely monitor and direct Technicians' daily work.

50.     The tracking application enables Defendants to exert extensive control over Technicians.  This by itself constitutes control indicative of the control of an employer over employees.

51.     Defendants entered daily routing information into the tracking application for Technicians' workday and directed Technicians to job sites through the tracking application.

Technicians did not control the routing information entered into the tracking application.

52.     Technicians received a tech number and password when they downloaded the tracking application onto their smartphones, which they used to log in to the tracking application.

53.     The tracking application provided the routing and order of jobs each day, the window of time the Technician was required to be at the job site, information as to opening each job upon arrival at the job site, the nature of the installation, notes about the customer, and other job-specific directions.

54.     Through the tracking application, Technicians indicated the time they expected to arrive at each job site.  Upon arrival at a job site, Technicians logged in to the tracking application and selected the installation.

55.     Upon completion of the installation, Technicians entered information into the tracking application indicating the job was completed.

56.     The tracking application then immediately provided a new installation to the Technician and a window of time for Technicians to arrive at the next job site.

57.     This process repeated each time an installation was completed.

58.     The tracking application dictated when Technicians' work started, when their work ended, and the number of installations they were assigned.  Technicians had no discretion in these matters.

59.     Defendants, through the tracking application, controlled the number of assignments Technicians received each day.

60.     Defendants required Technicians to achieve specified performance metrics including, but not limited to, metrics measuring on-time arrivals at installation appointments, trouble calls by customers, and repeat trouble calls by customers.

61.     Tracking information contained within the application provided information to Defendants as to the times of the work performed by each Technician.

62.     Defendants' tracking application allowed Defendants to compile and retain information about the specific work each Technician performed during each work day, including the time and location of each installation performed.

63.     Defendants required Technicians to fully complete their routes and work orders in a timely manner as dictated by the tracking application.

64.     The tracking application allowed Defendants to exercise exacting control over Technicians.

65.     Defendants' quality control measures and regulation of Technician schedules stems from the nature of the business and are the types of control that is highly relevant to the lack of Technicians economic dependence.

66.     Business needs of Defendants requiring exertion of such control over Technicians, including meeting and ensuring the requirements and expectations of the cable companies and high-speed data service providers with whom Defendants contract and do business, does not immunize Defendants from the FLSA's requirements. When the nature of Defendants' business requires them to exert such control over Technicians, Defendants must hire employees, not independent contractors.[3]

---

[3] *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013) (further noting the economic reality inquiry requires examination of the nature and degree of Defendants' alleged control, not why the alleged employer exercised such control); *Thornton v. Mainline Communications, LLC*, 157 F.Supp.3d 844, 850 (E.D. Mo. 2016) ("Plaintiffs and other Mainline technicians were tracked every minute they worked throughout the day. This tracking included when plaintiffs were on a job, when they completed a job, when they were in route to another job, drive time between jobs, lunch breaks, points assigned and completed per day, routing, late appointments, and repeat service and installation call rates. In essence, plaintiffs and other Mainline technicians were monitored throughout the day down to the minute.").

**DEFENDANTS' FURTHER CONTROL OVER TECHNICIANS**

67.     Technicians went to Defendants' work locations to start work and to get equipment.

68.     Defendants maintained and posted information regarding the performance numbers and quality control ratings of Technicians.

69.     Technicians wore uniforms and identification badges.

70.     Defendants had appearance expectations for Technicians.

71.     Defendants had expectations and requirements for the types of vehicles, tools, and equipment Technicians could use.

72.     Defendants coordinated Technicians' pay and maintained records of Technicians' work.

73.     Defendants and Technicians were free to terminate their relationship at any time without consequence.  Defendants could also discipline Technicians through write-ups, lower-paying installations, and removal from installation assignments.

74.     Technicians often could not work for Defendants and cable providers other than Defendants.

75.     Defendants have made statements acknowledging the classification of Technicians as independent contractors was improper.

**TECHNICIANS HAD NO OPPORTUNITY FOR PROFIT OR LOSS DEPENDING UPON MANAGERIAL SKILL**

76.     The earnings of Technicians depended on installation assignments and Defendants' pay scale—not on any entrepreneurial or business skills possessed or exercised by Technicians.

77.     There was no negotiation or determination as to the piece rates paid to Technicians.

78.     Technicians did not normally advertise their services and were commonly paid as individuals, not separate entities.

11

79.     Technicians generally did not have authority or ability to hire separate employees or helpers.

80.     Technicians did not exercise business judgment or initiative.  Technicians could only work more or fewer hours, which does not establish managerial discretion or initiative as a matter of law.

81.     Technicians did not bid for jobs.

82.     Plaintiff and other Technicians did not have their own work addresses, locations, service departments, or assistants.

83.     Defendants trained Technicians.  No special training or education other than on-the-job training was needed to perform the work of Technician.

84.     At least some Technicians, including Plaintiff, complained about being paid as independent contractors rather than being paid as employees, yet Defendants maintained the same pay practices.

85.     Technicians' did not use any managerial skills, nor did managerial skills affect profit or loss.

86.     Technicians did not undertake risk of higher profits or business losses.

87.     Defendants supplied and assigned cable and high-speed data devices and other equipment that Technicians needed to perform cable television, phone and high-speed data installations (*e.g.*, cable boxes, modems, wiring, NTAs, cables and other equipment).  Technicians did not invest in much of the equipment used to perform the job.

88.     Technicians merely purchased tools to perform the particular job of cable, phone, and high-speed data installation (*i.e.*, tools of the trade).

89.     Technicians' investment in tools and equipment did not support a business beyond

12

their particular work for Defendants.

## DEFENDANTS DID NOT REQUIRE TECHNICIANS TO HAVE SPECIAL SKILLS

90.     Technicians are only required to have the physical capabilities required to perform cable installation work, such as the ability to use tools, climb a ladder, crawl underneath a house, or work in an attic.

91.     Defendants preferred but did not require Technicians to have prior experience installing cable, phone, or high-speed data services.

92.     Technicians did not exercise business skills, judgment, or initiative.

## THE PERMANENCY AND DURATION OF TECHNICIANS' RELATIONSHIPS WITH DEFENDANTS WAS INDICATIVE OF THAT OF AN EMPLOYEE

93.     Technicians' employment relationships with Defendants were most commonly indefinite, exclusive, at-will relationships like that of employees.

94.     These employment relationships could be terminated, or end, at any time for any reason, without consequence.

95.     The financial disparity between Technicians and Defendants evidences that Technicians were not in business for themselves.

## THE WORK TECHNICIANS PERFORMED IS THE INTEGRAL BUSINESS OF DEFENDANTS

96.     Cable television, phone, and high-speed data installation constitutes the integral business of Defendants.  The work Technicians performed was that of the integral business of Defendants.

## HOURS WORKED BY TECHNICIANS

97.     Technicians, including Plaintiff, worked over 40 hours per work week without overtime compensation.

98.     Defendants failed to keep full and accurate records of the time Technicians worked in order to pay overtime for hours worked over 40 on a week-by-week basis.

99.     Upon information and belief, the tracking application data provides some degree of evidence as to the time worked by Technicians.

## COUNT I

## FAILURE TO PAY OVERTIME COMPENSATION
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

100.    Plaintiff incorporates by reference all preceding paragraphs, as if fully stated herein.

101.    The FLSA regulates, *inter alia*, the payment of overtime wages to employees who are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce to include Plaintiff and those similarly situated. 29 U.S.C. § 207(a)(1).

102.    Defendants are subject to the overtime pay requirements of the FLSA because they constitute a joint enterprise engaged in interstate commerce and Plaintiff and similarly situated Technicians engaged in interstate commerce.

103.    Plaintiff and those similarly situated were entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 216(b).

104.    During all times relevant to this action, Defendants were the "employers" of Plaintiff and similarly situated Technicians within the meaning of the FLSA. 29 U.S.C. § 203(d).

105.    During all times relevant to this action, Plaintiff and the similarly situated Technicians were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

106.    The FLSA requires employers to pay non-exempt employees one-and-one-half times the regular rate of pay at which they are employed for all hours worked over forty per work week. 29 U.S.C. § 207.

107.    Defendants failed to pay Plaintiff and the similarly situated Technicians overtime compensation at the statutorily prescribed rate of one-and-one-half times the regular rate of pay for time worked in excess of forty (40) per work week.

108.    Defendants violated the FLSA by failing to keep accurate records of all time worked and wages paid to Plaintiff and those similarly situated on a week-by-week basis.

109.    Plaintiff and the similarly situated Technicians are owed liquidated damages as a result of not being paid overtime. Defendants did not have good faith or reasonable grounds for their violation of the FLSA.  Defendants did not take affirmative and active measures to ensure their pay practices complied with the FLSA.

110.    Defendants knew or should have known that Plaintiff and those similarly situated were misclassified as independent contractors.

111.    Prior FLSA complaints, settlements or DOL investigations evidence actual notice to Defendants of the potential for improper wage and hour practices.  *See*, *e.g.*, *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998); *Dole v. Elliott Travel and Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991).

112.    Defendants knew or were aware that Plaintiff and those similarly situated were entitled to overtime compensation because Defendants entered into settlements with others misclassified as independent contractors. *See, e.g., Lonnie Spells v. Communications Unlimited, Inc., et al.*, No. 4:15-CV-00747-ERW.

113.    Defendants were on notice regarding their improper pay practices for Technicians, including Plaintiff and those similarly situated, since at least the filing of the prior *Spells* Complaint in May 2015.

114.    Defendants failed to take efforts to remedy any lack of knowledge regarding the

FLSA's requirements or make changes in their practices.

115.    Defendants willfully violated the FLSA by failing to pay Plaintiff and those similarly situated overtime compensation in that Defendants knew or showed reckless disregard for whether their wage and hour practices constituted prohibited conduct under the FLSA.

116.    Defendants showed evident indifference to the FLSA's requirements that Defendants pay overtime compensation to Plaintiff and those similarly situated.

117.    Defendants failed to post notice of FLSA rights and misinformed Technicians as to their rights, justifying equitable tolling of the statute of limitations.

WHEREFORE Plaintiff seeks relief and judgment against Defendants, individually and as a collective action, as follows: judgment against Defendants for violation of the overtime wage provisions of the FLSA; an award of unpaid overtime wages; determination that Defendants' FLSA violations were willful; imposition of liquidated damages against Defendants; pre-judgment and post-judgment interest as provided by law; an award of reasonable attorneys' fees and litigation and court costs incurred; an incentive award to the named Plaintiff for bringing this action; and such other and further relief as the Court deems fair and equitable under the circumstances.

## COUNT II

## CLASS ACTION FOR VIOLATION OF THE MMWL

118.    Plaintiff incorporates by reference all preceding paragraphs, as if fully stated herein.

119.    At all relevant times herein, Plaintiff and the proposed putative Rule 23 Class have been entitled to the rights, protections, and benefits provided under the MMWL.

120.    Plaintiff proposes the following Rule 23 class definition: all current or former Technicians of Defendants in the State of Missouri who worked in excess of forty hours in any

given workweek during the two years preceding the filing of this Complaint and who were classified as independent contractors ("Technician Class").

121.    The MMWL regulates, among other things, the payment of overtime wages by employers, subject to limited exemptions not applicable herein. §§ 290.500(3) and (4), 290.505.1, RSMo.

122.    During all times relevant to this action, Defendants were the "employer" of Plaintiff and the Class within the meaning of the MMWL. § 290.500(3), (4), RSMo.

123.    During all times relevant to this action, Plaintiff and the Technician Class were "employees" within the meaning of the MMWL. § 290.500(3) RSMo.

124.    Pursuant to the MMWL, employees are entitled to be compensated at a rate of not less than one-and-one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. § 290.505.1, RSMo.

125.    Defendants, pursuant to their common policy and practice, violated the MMWL by refusing and failing to pay Plaintiff and the Technician Class overtime wages required under the MMWL. § 290.505.1, RSMo.

126.    Plaintiff and the Technician Class are victims of a uniform policy, practice, and scheme of Defendants to misclassify Plaintiff and the Technician Class members as independent contractors so as to avoid payment of overtime wages they were otherwise entitled to as employees.

127.    Plaintiff and the Technician Class are entitled to damages equal to all unpaid overtime wages due within the two years preceding the filing of this Complaint plus periods of equitable tolling, along with an additional equal amount as liquidated damages. § 290.527, RSMo.

128.    Plaintiff and the Technician Class are entitled to an award of pre-judgment and post- judgment interest at the applicable legal rate.

129. Defendants are liable under § 290.527, RSMo for Plaintiff's costs, expenses, and reasonable attorneys' fees incurred in this action.

130. Plaintiff's MMWL claim satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for a class action.

131. The Technician Class satisfies numerosity because it likely consists of more than one hundred persons and/or joinder of all class members in a single action is impracticable.

132. Questions of fact and law common to the Technician Class predominate over any questions affecting only individual members. The questions of law and fact common to the Technician Class that arise from Defendants' actions include, but are not limited to:

   a. Whether Defendants misclassified the Technicians as "independent contractors";

   b. Whether Defendants failed to fully and accurately record the hours worked by the Technician Class as required by § 290.520.8, RSMo.

133. Plaintiff's claims are typical of those of the Class in that:

   a. Plaintiff and the Technician Class worked as Technicians for Defendants installing cable television, phone, and high-speed data services in Missouri;

   b. Plaintiff and the Technician Class were subjected to the same, or at least very similar, control and treatment by Defendants;

   c. Plaintiff and the Technician Class have worked over 40 hours per week during at least one or more workweeks;

   d. Plaintiff and the Technician Class have been denied overtime pay for work in excess of 40 hours per workweek; and

   e. Defendants failed to keep full and accurate records of each Technician Class member's time worked each work week for purposes of paying weekly overtime.

134.    A class action is appropriate to fairly and efficiently adjudicate this controversy.

135.    Plaintiff is an adequate representative of the Technician Class because she is a member of the Technician Class and her interests do not conflict with the interests of other members of the Technician Class she seeks to represent.  The interests of the members of the Technician Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage-and-hour class and collective action litigation.

136.    Maintenance of this action as a class action is the superior method of adjudication with respect to considerations of consistency, economy, efficiency, fairness, and equity.  No other litigation is pending over the same controversy.  It is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Technician Class.  There are no material or practical difficulties impairing the management of a class action.

137.    It would be impracticable and undesirable for each member of the Technician Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Technician Class members.

WHEREFORE, on Count II of this Complaint, Plaintiff and the putative Technician Class seek orders and judgment against Defendants as follows: class certification of the proposed Technician Class; compensatory damages, including for unpaid overtime; liquidated damages; attorneys' fees and costs; pre-judgment and post-judgment interest as provided by law; incentive award; and for such other relief as the Court deems fair and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, those similarly situated, and the Technician Class hereby request a trial by jury of all issues so triable.

## **VERIFICATION**

I, Tacita Fair, verify under penalty of perjury that the foregoing Verified Complaint is true and correct to the best of my knowledge, information, and belief.

Executed on this _____ day of _____, 2017.

_____
Tacita Fair

## **VERIFICATION OF SIGNED ORIGINAL DOCUMENT**

Pursuant to Local Rule 11-2.11, Kevin J. Dolley, attorney for Plaintiff, hereby attests to the existence of a paper copy of this Declaration bearing the original signature. The verification page of the Verified Complaint was filed electronically with a blank signature line. Counsel will retain the paper copy bearing the original signature during the pendency of the litigation including all possible appeals.

Respectfully Submitted,


By: _____ */s/ Kevin J. Dolley* _____
Kevin J. Dolley (E.D. Mo. #54132MO)
Michael G. Mueth (E.D. Mo. #58995MO)
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO 63144
(314) 645-4100 (office)
(314) 736-6216 (fax)
kevin@dolleylaw.com
michael.mueth@dolleylaw.com

*Attorneys for Plaintiff Tacita Fair and*
*those similarly situated*

22