UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TACITA FAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:17-CV-02391 |
| ) | |
| COMMUNICATIONS UNLIMITED, ) | |
| INC., C.U. EMPLOYMENT, INC., ) | |
| COMMUNICATIONS UNLIMITED ) | |
| CONTRACTING SERVICES, INC., ) | |
| COMMUNICATIONS UNLIMITED ) | |
| ALABAMA, INC., and MARTIN C. ) | |
| ROCHA, ) | |
| ) | |
| Defendant ) | |

**DEFENDANTS C.U. EMPLOYMENT, INC., COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC., AND MARTIN ROCHA'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION**

Defendants C.U. Employment, Inc., Communications Unlimited Contracting Services, Inc., and Martin Rocha (collectively "Defendants"), for their Memorandum in Support of their Motion to Dismiss, and state as follows:

### FACTUAL BACKGROUND

On September 11, 2017, Plaintiff Tacita Fair filed suit against Communications Unlimited, Inc., C.U. Employment, Inc., Communications Unlimited Contracting Services, Inc., Communications Unlimited Alabama, Inc., and Martin C. Rocha stating causes of action under the Fair Labor Standards Act ("FLSA"), and the Missouri Minimum Wage Law

("MMWL"), on behalf of herself and others similarly situated. (*See* Doc. 1.) On October 27, 2017, Defendants C.U. Employment, Inc. and Communicates Unlimited Contracting Services, Inc. filed their Answer to Plaintiff's Complaint asserting, among other things, that Plaintiff's claims are covered by an Arbitration Agreement that precludes this lawsuit and mandates arbitration. (*See* Doc. 18, Affirmative Defenses ¶ 3.) On January 3, 2018, Defendant Martin Rocha filed his Answer to Plaintiff's Complaint asserting, among other things, that Plaintiff's claims are covered by an Arbitration Agreement that precludes this lawsuit and mandates arbitration. (*See* Doc. 26, Affirmative Defenses ¶ 3.)

On June 21, 2018, Defendant Communications Unlimited Alabama, Inc. ("CUA") filed a Motion to Dismiss, or in the Alternative, to Stay and Compel Arbitration. In support of this Motion, CUA filed an arbitration agreement executed by Plaintiff in March of 2016 in which Plaintiff agreed to arbitrate "all claims or controversies" with CUA, "whether or not arising out of or related to [Plaintiff's] with" CUA, including claims for wages, salary, or compensation, and claims arising from alleged state law or FLSA violations (the "Arbitration Agreement"). The Arbitration Agreement further prohibits such claims from being conducted as a class action or collective action. (*See* Doc. 78, Exhibit 1, and Doc. 79.)

Upon receiving a copy of the Arbitration Agreement signed by Plaintiff that was filed with CUA's Motion, Defendants determined that they are third-party beneficiaries of that agreement. Specifically, that the Arbitration Agreement provides, in part, as follows:

> CU Alabama and I mutually agree to resolve by arbitration all claims or controversies ("claim" or "claims"), past, present, or future, whether or not arising out of or related to my relationship with CU Alabama or termination of

2

> that relationship, that CU Alabama may have against me or that I may have against CU Alabama or against its officers, directors, members, stockholders, employees, agents, contractors, insurers, attorneys, and customers of CU Alabama to the extent I assert a claim or claims against any of these designated individuals or entities based on alleged acts or omissions undertaken for, on behalf of, and/or within the line and scope of my relationship with CU Alabama, i.e. a claim or claims relating to their official capacity for which I seek to impose, or could possibly impose, indirect, derivative, and/or vicarious liability against CU Alabama or any of its customers.

(*See* Motion to Dismiss, Exhibit 1, pg. 1.) The Arbitration Agreement defines "CU Alabama" as CUA, as well as all successors and assigns of CUA and all stockholders, owners, managers, employees, insurers, attorneys, and agents alleged to be acting within the scope of their relationship with CUA. (*See* Exhibit 1, pg. 1.)

The Arbitration Agreement further states that it is intended to cover any claims related to the FLSA or similar state law, and any claims related to issues concerning wages, salary, benefits, or other compensation due. (*See* Exhibit 1, pg. 2.) The Arbitration Agreement prohibits claims from going forward in arbitration as a class action or collective action, and waives the parties' rights to assert such actions. (*See* Exhibit 1, pgs. 2-3.) The Arbitration Agreement is to be governed by the rules of the Federal Arbitration Act ("FAA"), and arbitration is to conform to the procedures enacted by the American Arbitration Association ("AAA") or the Judicial Arbitration & Mediation Services, Inc ("JAMS"), as chosen by the party not pursuing the claim for arbitration. (*See* Exhibit 1, pgs. 1, 5.)

Finally, the Arbitration Agreement states that the parties agree that the Arbitrator should preside over any questions of arbitrability, including whether the parties entered into the agreement, whether the claims made fall within the agreement, and whether the

agreement is enforceable. (*See* Exhibit 1, pg. 6.) The Arbitration Agreement is based upon the consideration of the parties' mutual agreements to arbitrate claims against one another. (*See* Exhibit 1, pg. 9.) It further states that if any provision of the Arbitration Agreement is found to be void or enforceable by the Arbitrator, such provision is severable and does not affect the validity of the remainder of the agreement. (*See* Exhibit 1, pg. 9.)

## ARGUMENT IN SUPPORT

### A. The Arbitration Agreement mandates that Plaintiff's claims be determined by an Arbitrator, and prohibits collective or class actions.

Plaintiff's claims for violations of the FLSA and the MMLW clearly fall within the purview of the Arbitration Agreement executed by Plaintiff. Specifically, the Arbitration Agreement provides that Plaintiff is to arbitrate "all claims or controversies" Plaintiff may have against CUA and/or third-party beneficiaries of the Arbitration Agreement, and further sets forth a non-exclusive list of the types of disputes subject to arbitration. (*See* Exhibit 1, pg. 1-2.) This list includes claims for "wages, salary, benefits, or other compensation due, claims for violations of the [FLSA] or any state's law relating to the payment of wages and/or hours. …" (*See* Exhibit 1, pg. 2.)

Moreover, the Arbitration Agreement states that "arbitration pursuant to the Agreement will not be conducted as a class action, collective action, or joint or consolidated action involving parties other that [CUA] (or its officers, directors, members, stockholders, employees, agents, contractors, insurers, attorneys or customers" and Plaintiff. (*See* Exhibit 1,

4

pg. 3.) All parties further waive their rights to bring a claim as a class action or collective action. (*Id.*)

As such, the Arbitration Agreement is applicable to Plaintiff's claims, and prevents Plaintiff from bringing such claims as a collective action. "An arbitration clause is to be construed so as to favor arbitrability and an order to arbitrate should not be denied unless is may be said with positive assurance that the arbitration clause does not cover the asserted dispute." *Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 229 (Mo. App. W.D. 2002). Here, there is no question that the type of claims at issue fall squarely within the explicit terms of the Arbitration Agreement.

Moreover, the United States Supreme Court has recently reemphasized that under the FAA, "Congress instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018). Indeed, in *Epic Systems*, the Court specifically upheld the language of an arbitration agreement that prohibited the plaintiff from bringing a collective action under the FLSA, as Plaintiff attempts to do here. *Id.* at 1632.

As such, to enforce the Arbitration Agreement as written, Plaintiff should be compelled to arbitrate her claims individually as she has agreed to do.

**B.    If there is any question as to whether Defendants are direct or third-party beneficiaries of the Arbitration Agreement, such issues should be resolved by the Arbitrator.**

As noted above, the Arbitration Agreement was entered into by Plaintiff and CUA. However, as explained in more detail below, the Arbitration Agreement's application is not

5

limited to claims between those two parties only. Rather, Defendants are both direct and third-party beneficiaries of the Arbitration Agreement under the Agreement's plain language, and as alleged in Plaintiff's Complaint. However, to the extent that there is any question as to whether Defendants are beneficiaries of the Arbitration Agreement, such questions must be resolved by the Arbitrator, not the courts.

The Arbitration Agreement clearly states that the Arbitrator is to decide all "gateway" questions of arbitrability. Specifically, it states that the parties "agree and acknowledge their clear and unmistakable intent" to have such issues decided by the Arbitrator, as provided for by the United States Supreme Court in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Such "gateway" questions include "whether the parties entered into an agreement to arbitrate." (*See* Exhibit 1, pg. 6.) Moreover, the Arbitration Agreement specifies that the FAA "shall govern the interpretation, enforcement, and all proceeding pursuant to the Agreement," and that the arbitration will be conducted under the rules of the AAA or the JAMS. (*See* Exhibit 1, pg. 1, 5)

When an arbitration agreement contains a provision delegating threshold issues of arbitrability to an arbitrator, the provision must be upheld so long as it demonstrates, as here, that the parties demonstrated "clear and unmistakable" intent to delegate such issues. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010). A parties' intent should be "expressed by the plain and ordinary meaning of the language of the contract." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. banc 2017) (citing *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013). "It is only where the contract is ambiguous and not clear

that resorting to extrinsic evidence is proper to resolve the ambiguity." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973).

Here, there is no ambiguity. The Arbitration Agreement includes the "clear and unmistakable" language, and references the United States Supreme Court case that first set forth this standard. Moreover, the AAA rules explicitly provide that the "[a]rbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," which the Missouri Supreme Court has held to clearly evidence the parties' intent to delegate threshold issues of arbitrability to the arbitrator, even in the absence of the "clear and unmistakable" language that is found here. *Pinkerton*, 531 S.W.3d at 45.

Gateway issues to arbitration include issues involving the validity, enforcement, application, or formation of the agreement. *Dotson v. Dillard's, Inc.* 472 S.W.3d 599, 606 (Mo. App. W.D. 2015). Moreover, as noted, the Arbitration Agreement here specifically provides that gateway issues include whether the parties at issue entered into an agreement to arbitrate. As such, if there is any question as to whether Defendants are a beneficiary of the Arbitration Agreement, such questions should be resolved by the Arbitrator.

## C. Defendants are direct or third-party beneficiaries of the Arbitration Agreement.

While the question of whether Defendants are beneficiaries of the Arbitration Agreement is a question for the Arbitrator, Defendants recite their argument as to why they are beneficiaries here for the Court's reference.

The Arbitration Agreement was entered into by Plaintiff and CUA; however, the Arbitration Agreement's application is not limited to claims between those two parties only. As an initial matter, Plaintiff's own Complaint asserts that all Defendants "are inter-related, commonly owned," and "form a single integrated enterprise," and therefore, "constitute joint employers of Plaintiff." (Doc. 1, ¶¶ 10-12.) In so asserting that all Defendants are one in the same, Plaintiff's own allegations demonstrate that Defendants are entitled to assert their rights under the Arbitration Agreement to the same extent as the CUA. Indeed, as noted above, the Arbitration Agreement defines "CU Alabama" to include CUA, as well as its agents acting within the scope of their relationship with CUA.

Moreover, even if Defendants are not direct beneficiaries of the Arbitration Agreement, they may still be considered intended third-party beneficiaries. In particular, the Arbitration Agreement states that it applies to claims against CUA, as well as claims made against CUA's "contractors" and "customers," including any claims based on indirect, derivative, or vicarious liability against CUA's "customers." The actual relationship between Defendants and CUA is that of both a CUA customer and a contractor.

Specifically, Defendants contract with CUA to provide certain services on Defendants' behalf for Defendants' customers. CUA, therefore, acts a sub-contractor for Defendants, while Defendants act as the general contractor of the services provided. CUA is not owned by, nor does it exclusively work for, Defendants. Moreover, Defendants pay CUA for the work it performs, thereby making Defendants a CUA customer. *See, e.g., Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 358 (Mo. App. W.D. 2004) (noting that the plain and ordinary meaning

of "customer" is "one that purchases some commodity or services") (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 559 (1971)). The Arbitration Agreement specifically encompasses claims Plaintiff may have against CUA, or its contractors or customers, arising out of Plaintiff's relationship with CUA, and for which claims made against CUA's contractors and customers are based on "acts or omissions undertaken for, on behalf of, and/or within the line and scope of [Plaintiff's] relationship with [CUA]," such as derivative or vicarious liability.

Here, in asserting claims against Defendants, Plaintiff is seeking that they be held liable for the acts or omission of CUA, the party responsible for Plaintiff's employment, wages, salary, and benefits. Because these claims necessarily must arise from Plaintiff's relationship with CUA, and because Defendants is a contractor and customer of CUA, Defendants are intended third-party beneficiaries of the Arbitration Agreement and are entitled to enforce it to the same extent as CUA and Plaintiff. *See Nesslage v. York Securities, Inc.*, 823 F.2d 231, 232-33 (8th Cir. 1987) (Where an arbitration agreement indicates the intent to encompass certain third-party beneficiaries, such beneficiaries may enforce the provision even when not a signatory to the agreement).

D. **Even if Defendants are not direct or third-party beneficiaries of the Arbitration Agreement, a non-signatory to an arbitration agreement may compel arbitration where the claims allege that the non-signatory and a signatory engaged in concerted misconduct.**

While the issue need not be reached as Defendants are beneficiaries of the Arbitration Agreement, more generally a non-signatory, non-beneficiary to an arbitration agreement may compel a signatory to arbitrate claims under some circumstances. *See, e.g., Donaldson Co., Inc.*

9

*v. Burroughs Diesel, Inc.,* 581 F.3d 726, 732 (8th Cir. 2009); *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630-31 (2009); *Finnie v. H & R Block Fin. Advisors, Inc.*, 307 Fed.Appx. 19, 21 (8th Cir. 2009) (compelling arbitration based on a close relationship between signatories and non-signatories); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (applying an estoppel theory based on a close relationship of parties and claims that were intertwined with contract rights and duties); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (applying a "traditional agency theory" regarding a non-signatory employee of a signatory).

For instance, in *CD Partners, LLC v. Grizzle*, the Eighth Circuit recognized two specific circumstances where a non-signatory to an arbitration agreement may seek to enforce it. 424 F.3d at 798. The first relies on agency and related principles to allow a non-signatory to compel arbitration when, as a result of the non-signatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement. *Id.* The second relies on principles of equitable estoppel, and suggests that "[a] willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues." *Id.* at 799. (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.2003)).

In this instance, Defendants are entitled to compel arbitration under both circumstances. Specifically, the first theory relying on the principal/agency relationship is based on the idea that a third-party beneficiary to an arbitration may seek to enforce it even

when not a signatory to that agreement. *See PRM Energy Systems*, 592 F.3d at 834 (citing *Nesslage*, 823 F.2d at 233)). As explained above, as referenced third-party beneficiaries to the Arbitration Agreement, Defendants may enforce the agreement, even though they are not signatories to that agreement.

The second theory based on equitable estoppel likewise dictates that Defendants can enforce the Arbitration Agreement, even if they are found not to be third-party beneficiaries of that agreement. Specifically, in discussing this theory, *CD Partners* relied upon *MS Dealer Serv. Corp. v. Franklin*, in which the Eleventh Circuit set forth the theory of concerted misconduct as a basis to compel arbitration when there was no agency or other close relationship between the signatory plaintiff and non-signatory defendant. 424 F.3d at 798-99. Specifically, in *MS Dealer*, the court held that the "application of equitable estoppel is warranted … when the signatory to the contract containing the arbitration clause raises allegations of … substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." 177 F.3d at 947.

The concerted misconduct basis to compel arbitration was further discussed in *Donaldson Co., Inc. v. Burroughs Diesel, Inc.,* though it was found to be inapplicable to the facts of that case. 581 F.3d at 733-35. Nonetheless, *Donaldson* states that in order to warrant the benefit of alternative estoppel based on concerted misconduct, at a minimum, "the plaintiff must specifically allege coordinated behavior between a signatory and a non-signatory." *Id.* at 734. More specifically, "[t]he concerted-misconduct test requires allegations of 'pre-arranged,

collusive behavior' demonstrating that the claims are 'intimately founded in and intertwined with' the agreement at issue." *Id.* at 734-35 (quoting *MS Dealer*, 177 F.3d at 948).

Similarly, in *PRM Energy Systems, Inc. v. Primenergy, LLC*, the Eighth Circuit applied the concerted-misconduct theory to permit a non-signatory to an arbitration agreement compel arbitration against a signatory to that agreement. 592 F.3d 830 (8th Cir. 2010). In that instance, a licensor of patents brought claims against a licensee and a sub-licensee. *Id.* at 832. The licensing agreement between the licensor and the licensee contained an arbitration provision. However, there was no agreement between the licensor and the sub-licensee. *Id.* at 832-33. Nonetheless, the sub-licensee sought to compel arbitration against the licensor on the basis of the licensing agreement, to which it was not a signatory. *Id.* at 833.

The Eighth Circuit upheld the order compelling arbitration of the claims against the sub-licensee on the basis of the concerted misconduct alleged. The Court held that the requisite relationships between the "persons, wrongs, and issues necessary to compel arbitration." *Id.* at 836. Specifically, the licensing agreement contemplated the potential that other entities may enter into sub-licenses, and as such, it could not be said that the non-signatory sub-licensee was a "complete stranger" to the licensee. *Id.* Moreover, the claims made against the licensee and the sub-licensee alleged "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories." *Id.* (quoting the district court's order compelling arbitration).

Here, Plaintiff makes identical claims against Defendants and CUA, and indeed, refers to them as one entity throughout her Complaint. Moreover, as noted above, the Arbitration

12

Agreement recognizes other potential beneficiaries to the agreement, such as those agents, customers, and contractors of CUA. As such, it cannot be said that Defendants are "complete strangers" to Plaintiff with regard to her claims, and the alleged misconduct demonstrates the requisite relationships between persons, wrongs, and issues necessary to compel arbitration for all parties involved.

Indeed, the reasons for allowing both signatories and non-signatories to the Arbitration Agreement in this instance are even more persuasive than in *PRM Energy*. There, the claims against the signatory had already been concluded through arbitration by the time the non-signatory even sought to compel arbitration of the claims against it. As such, the non-signatory in that case was seeking to compel arbitration even in the absence of, as we have here, a corresponding motion to compel by a signatory defendant. Moreover, the claims made against the signatory and non-signatory in *PRM Energy*, though similar and related, were not identical. Here, Plaintiff makes identical claims against all Defendants, and therefore, allowing the signatory to the Arbitration Agreement to compel arbitration, while requiring that the non-signatures continue to defend their claims in federal court, could lead to conflicting results, and moreover, would not promote judicial economy.

Accordingly, under these circumstances, it is appropriate to permit Defendants to compel arbitration under the Arbitration Agreement to the same extent as CUA, even if Defendants are found not to be direct or third-party beneficiaries of that agreement.

## CONCLUSION

WHEREFORE, Defendants C.U. Employment, Inc., Communications Unlimited Contracting Services, Inc., and Martin Rocha, move this Court for its Order dismissing Plaintiff's Complaint and compelling Plaintiff to arbitrate her cause of action and claim against Defendants in accordance with the arbitration agreement to which Defendants are beneficiaries, or in the alternative, staying this action so that the issue of whether Defendants may enforce the arbitration agreement can be determined by an Arbitrator, and for further relief which the Court deems just and appropriate under the circumstances.

BROWN & JAMES, P.C.

/s/ *Steven H. Schwartz*
Steven H. Schwartz,    #36436MO
sschwartz@bjpc.com
800 Market Street, 11th floor
St. Louis, Missouri 63101
314.421.3400
Fax: 314.421.3128

Attorneys for Defendants C.U. Employment, Inc., Communications Unlimited Contracting Services, Inc., and Martin Rocha

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Kevin J. Dolley
Michael G. Mueth
Law Offices of Kevin J. Dolley, LLC
2726 S. Brentwood Blvd.
St. Louis, Missouri  63144
kevin@dolleylaw.com
Michael.mueth@dolleylaw.com
Attorneys for Plaintiff

                                                 /s/ *Steven H. Schwartz*
                                                 Steven H. Schwartz,     #36436MO

14448292