UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TACITA FAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 2391 RWS |
| | ) | |
| COMMUNICATIONS UNLIMITED INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM & ORDER**

Non-party Charter Communications, Inc. ("Charter") moves to quash a subpoena from Plaintiff Tacita Fair, requesting contracts, a tracking application, and emails exchanged between Charter and Defendants. Because Fair's requests do not impose an undue burden on Charter and are relevant to her claims, I will deny Charter's motion to quash.

# **BACKGROUND**

Plaintiff Fair claims that Defendant communications companies misclassified her and other cable-installing technicians ("Technicians") as independent contractors. Defendants perform installation services for Charter and other telecommunications companies. Based on declarations submitted by five former Technicians, I granted conditional certification to an opt-in class of Technicians who installed cable on behalf of Communications Unlimited Alabama

(CUA). [No. 113]. I also gave Fair additional time to demonstrate that Technicians employed by Defendants' subcontractors are similarly situated, pending discovery of those subcontractors' Technicians' contact information. [Nos. 113, 122].

On May 11, Fair served a subpoena on Charter, noticing a 30(b)(6) deposition of a corporate representative and requesting four categories of documents. Fair asked Charter to (1) identify any agreements between Charter and Defendants, (2) identify applications used by Charter to track Technicians, (3) produce Technician information stored in those applications, and (4) describe the size, number, and types of emails exchanged between Charter and Defendants between September 11, 2014 and September 11, 2017. Those dates represent the window of time for which potential opt-in class members would have worked for Defendants.

At the time Fair made this request, I had equitably tolled certain opt-in Technicians claims, and ordered discovery to proceed on the scope of collective action certification. [No. 43]. Five days later on May 16, 2018, I granted Fair's first motion to compel, and ordered CUA to provide contact information for all Technicians defined in Fair's complaint. [No. 65]. On September 13, 2018, I granted in part Fair's motion for conditional certification. On November 6, 2018, I granted Fair's second motion to compel, ordering Defendants to provide contact

information for all 1099 independent contractors paid by subcontractors who installed cable on Defendants behalf. [No. 122].

On July 24, 2018, Charter filed this motion to quash Fair's subpoena. Fair represents that she has sought the same information from Defendants three times on January 16, March 20, and June 14, 2018, and that she had not received any responsive documents by May 11, 2018, when she served the subpoena, or by August 7, 2018, when she filed her response in opposition. After I granted Fair's second motion to compel, Defendants agreed to provide Fair with any agreements they had with Charter. Fair "maintains her entire subpoena to Charter is valid." [No. 135 at n.1].

## **LEGAL STANDARD**

Through subpoena, a plaintiff may direct a non-party to produce discoverable documents and attend a deposition. FED. R. CIV. P. 45(a). However, "[a] party . . . serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In evaluating relevance and proportionality, I shall consider "the importance of the issues . . . the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

3

importance of the discovery, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. I must restrict discovery that would be "unreasonably cumulative or duplicative" or discovery that the party could have "obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(c).

## **DISCUSSION**

In moving to quash Fair's subpoena, Charter argues that (1) any agreements or emails it has exchanged with Defendants and their employees are more conveniently obtained from Defendants. Charter also argues (2) that Fairs' request is overbroad, because it is not related to the narrow question of how Defendants pay their employees, (3) that complying with the subpoena would violate customer privacy because it would reveal the addresses of customers, and (4) that the requested information includes sensitive and confidential commercial information.

Charter is correct to note that, when information or documents are held by both a non-party and a party, one should seek that information first from the party. Enviropak Corp. v. Zenfinity Capital, LLC, No. 4:14CV00754 ERW, 2014 WL 4715384, at *4 (E.D. Mo. Sept. 22, 2014) (collecting cases). However, Fair sought this information from the parties three times before seeking it from Charter. Additionally, Fair's request is not overbroad. The contracts, applications, application data, and email metadata requested by Fair are relevant to calculate

4

damages, identify class members, and determine liability. Specifically, Fair seeks application data identifying the time stamps for Technicians' activities. She intends to use this data to determine how much unpaid overtime each Technician may have worked. Charters' application information, agreements, and emails are also necessary to demonstrate how much control Defendants exercised over the Technicians. C.f. Karlson v. Action Process Serv. & Private Investigations, LLC, 860 F.3d 1089, 1092 (8th Cir. 2017) (identifying "degrees of control" as one factor relevant to determining whether an individual is an employee or an independent contractor under the "economic reality" test). As a result, Fair's request is not overbroad or unduly burdensome.

Third, I am unconvinced that complying with the subpoena would disclose addresses or other personally identifiable information ("PII") of Charter's customers. The only data that Fair seeks from the tracking applications include Technicians' contact information, identification numbers, and time stamp data. (No. 92-1 at 8). Fair also asks that Charter "identify" certain aspects of the tracking applications, but only in general terms. For example, Fair asks that Charter disclose "how the Application(s) generate, record, or create data," and identify the "types of data generated" by the applications. I have no reason to believe that providing this generic information would lead to any concomitant PII disclosure. Charter's PII argument is without merit.

Finally, if any of the requested documents would disclose sensitive or confidential commercial information, Charter can protect that information with redactions or a protective order. Granted, Fair must show "substantial need" for any documents that would disclose proprietary business information. FED. R. CIV. P. 45(d)(3)(B), (C). Fair must also show that she could not otherwise obtain that information without "undue hardship." Id. Fair has met this standard. The Application tracking information is likely the best, and maybe the only, source of information available concerning Technicians' work hours and how their activities were supervised and therefore controlled. Additionally, Fair has demonstrated that she was unable to obtain this information through Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Charter's motion to quash Fair's subpoena, [No. 91], is **DENIED**.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　RODNEY W. SIPPEL
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2019.